Kerry K. Fennelly (SBN 232621)
kfennelly@kraw.com
Valentina S. Mindirgasova (SBN 272746)
vminidirgasova@kraw.com
Jessica M. Alvarez (SBN 311575)
jalvarez@kraw.com
Kraw Law Group, APC
1017 East Grand Avenue
Escondido, CA92025
(760) 747-1100 tel
(760) 747-1188 fax

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE INLAND EMPIRE IBEW-NECA DEFINED CONTRIBUTION TRUST FUND; BOARD OF TRUSTEES OF THE RIVERSIDE COUNTY EDUCATIONAL AND TRAINING TRUST FUND; BOARD OF TRUSTEES OF THE INLAND EMPIRE IBEW-NECA LABOR-MANAGEMENT COORPERATION COMMITTEE TRUST FUND; BOARD OF TRUSTEES OF NECA/IBEW FAMILY MEDICAL CARE TRUST FUND; BOARD OF TRUSTEES OF THE NATIONAL ELECTRICAL BENEFIT FUND; THE SOUTHERN SIERRAS CHAPTER OF NECA ON BEHALF OF THE ADMINISTRATIVE MAINTENANCE FUND, and LOCAL UNION NO. 440 OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, <br><br>                Plaintiffs, <br><br>        v. | CASE NO. <br><br> COMPLAINT: <br> 1. BREACH OF WRITTEN COLLECTIVE BARGAINING AGREEMENT AND RELATED TRUST AGREEMENTS <br> 2. VIOLATION OF SECTION 515 OF ERISA <br> 3. BREACH OF SETTLEMENT AGREEMENT |

1

COMPLAINT

ACS ENGINEERING, INC., a California )
corporation, and BABAK KAVOOSSI, )
an individual, )
                                    )
        Defendants. )
                                    )
                                    )
_____ )

Plaintiffs complain and allege as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this case under section 502(e) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e), which grants the district courts of the United States, as amended, the exclusive jurisdiction over civil actions brought by a fiduciary pursuant to section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), to redress violations or enforce the terms of ERISA or an employee benefit plan governed by ERISA. Such jurisdiction exists without respect to the amount in controversy or the citizenship of the parties, as provided in section 502(f) of ERISA, 29 U.S.C. § 1132(f).

2.    This Court also has jurisdiction over this case pursuant to section 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a), which grants the district courts of the United States original jurisdiction over suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce, without respect to the amount in controversy and the citizenship of the parties.

3.    Venue is proper in this Court pursuant to section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and section 301(a) of the LMRA, 29 U.S.C. § 185(a), as it is the district in which the subject employee benefit plans are administered, it is the district in which the relevant acts took place, and it is the district in which monies are due and payable.

4.    To the extent this Complaint sets forth any state law claims, this Court has supplemental jurisdiction over those claims pursuant 28 U.S.C. § 1367(a) because the state claims arise from the same case or controversy wherein the district court has original

jurisdiction over the civil action pursuant to 28 U.S.C § 1331. Specifically, this action arises out of Plaintiffs' allegations that Defendants failed to pay fringe benefits contributions to the respective Trust Funds, in violation of the governing Collective Bargaining Agreement, the Trust Agreements, and Settlement Agreement.

5. Additionally, the action does not raise novel or complex issues of State law, the state claims presented do not substantially predominate over the issues of Federal law, and there are no exceptional circumstances present in the case at hand to compel reasons for this Court to decline supplemental jurisdiction.

**PARTIES**

6. Plaintiffs are the Trustees of the Inland Empire IBEW-NECA Defined Contribution Trust Fund ("DC Fund"), the Riverside County Electrical Educational and Training Trust Fund ("Riverside Training Fund"), the Trustees of the Inland Empire IBEW-NECA Labor-Management Cooperation Committee Trust Fund ("LMCC"), NECA/IBEW Family Medical Care Trust Fund ("FMCP"), the National Electrical Benefit Fund ("NEBF"), and Southern Sierras Chapter of NECA on behalf of the Administrative Maintenance Fund ("Admin. Fund"; collectively "Trust Funds").

7. Plaintiffs also include the Local Union No. 440 International Brotherhood of Electrical Workers ("Local 440").

8. The Trust Funds and Local 440 are each duly organized and operating in the State of California.

9. The Trust Funds are multiemployer trust funds created and maintained pursuant to section 302(c) of the LMRA, 29 U.S.C. § 186(c).

10. The Trust Funds, except the LMCC Fund and the Admin. Fund, are multiemployer plans within the meaning of sections 3(37) and 515 of ERISA, 29 U.S.C. §§ 1002(37)(A) and 1145, and the Plaintiff trustees of these Trust Funds are "fiduciar[ies]" as defined in section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

11. The Plaintiffs bring this action on behalf of themselves and on behalf of participants and beneficiaries of the Plaintiff Trust Funds to recover benefits due,

COMPLAINT

pursuant to section 502 of ERISA, 29 U.S.C. § 1132, and as third-party beneficiaries of the Collective Bargaining Agreement pursuant to 29 U.S.C. § 185.

12.    Plaintiffs are informed and believe, and also allege thereon, that Defendant ACS Engineering, Inc. ("ACS") is and at all times relevant herein was, a corporation organized and existing under laws of the State of California with its principal place of business in Irvine, California.

13.    ACS is in the business of electrical engineering automation and design. As such, ACS is an "employer" in an industry affecting commerce, as defined and used in sections 3(5), 3(11), and 3(12) of ERISA, 29 U.S.C. §§ 1002(5), (11), and (12), and section 2(2) of the LMRA, 29 U.S.C. § 152(5).

14.    ACS is a signatory employer to a Collective Bargaining Agreement ("CBA"), which provides for payment of contributions to the Trust Funds. The CBA binds ACS to the provisions of the CBA and the respective Trust Agreements for the Trust Funds.

15.    Plaintiffs are informed and believe, and allege thereon, that Defendant Babak Kavoossi (collectively with ACS, "Defendants"), is a resident of Orange County, California and is, and was at all times relevant herein, the President and Chief Executive Officer of ACS.

16.    Mr. Kavoossi, as an individual, signed and entered into a contractual agreement with Plaintiffs as alleged below.

## FACTUAL ALLEGATIONS

17.    ACS executed and delivered a written agreement to Local 440, whereby ACS agreed to be bound by the terms and conditions of an existing Collective Bargaining Agreement in effect between Local 440 and the Southern Chapter of the National Electrical Contractors' Association, entitled the Inside Wireman's Agreement ("Local 440 Wireman's Agreement"). Attached hereto as Exhibit 1 and incorporated herein by reference is the executed copy of the written agreement with Local 440 binding Defendant ACS to the Local 440 Wireman's Agreement.

18.     Plaintiffs are informed and believe, and allege thereon, that at all times relevant herein, Defendant ACS was bound by the terms and conditions of the Local 440 Wireman's Agreements.

19.     At all times relevant herein, Defendant ACS employed employees covered by the Local 440 Wireman's Agreement.

20.     Pursuant to the terms of the Local 440 Wireman's Agreements, ACS is "obligated to make contributions to a multiemployer plan" within the meaning of section 515 of ERISA, 29 U.S.C. § 1145.

21.     Defendant ACS failed to timely submit its contributions to the Trust Funds for electrical services performed under the Local 440 Wireman's Agreement.

22.     The Trust Funds therefore determined that ACS was liable to the Trust Funds, for delinquent benefit contributions, accrued interest, and liquidated damages. Specifically, ACS is liable to the DC Fund, the Riverside Training Fund, the LMCC, the Admin. Fund, and Local 440 (collectively, "Inland Empire Trust Funds") for the work months of June 2021 through March 2022 for a sum of $38,966.16. ACS is liable to FMCP and the NEBF (collectively, the "National Funds"), for the work months of April through December 2021 and February through March 2022, for a sum of $62,224.44.

23.     On February 3, 2022, the Inland Empire Trust Funds and Defendants, entered into a Settlement Agreement to resolve the matter and forestall legal proceedings to collect the amounts owed to them only. Attached hereto as Exhibit 2 and incorporated herein by reference is the executed copy of the written agreement, signed by Mr. Kavoossi, as an individual and on behalf ACS.

24.     Pursuant to the terms of the Settlement Agreement, the Defendants jointly and severally agreed to pay the Inland Empire Trust Funds a sum of $42,652.83 ("Principal"), plus amortized interest at the rate of 8% per annum, by making monthly payments of at least $3,710.30 on or before the 1st of each month until the Principal plus the accrued interest is paid in full, beginning with the month of February 1, 2022.

25.     Defendants further agreed that they would timely submit to the Inland Empire Trust Funds, its monthly reports for the month of November 2021 forward, and timely pay its fringe benefit contributions and related amounts accruing, including liquidated damages and interest.

26.     Finally, Defendants agreed to pay the Inland Empire Trust Funds any amount found to be due pursuant an audit conducted by or completed after the date of the Settlement Agreement.

27.     Defendants timely made their first payment to the Inland Empire Trust Funds in the amount of $3,710.30, in accordance with the terms of the Settlement Agreement. Thereafter, Defendants failed to make any additional payments.

28.     Since March 1, 2022, Defendants have not made any monthly payments to the Inland Empire Trust Funds.

29.     Additionally, Defendants have also failed to submit to the Inland Empire Trust Funds, their contributions for the months of February and March 2022, in violation of the Trust Agreements, the Local 440 Wireman's Agreement, and the Settlement Agreement.

30.     In accordance with the terms of the Settlement Agreement, on March 10, 2022, by and through their counsel, the Inland Empire Trust Funds provided Defendants with a written Notice of Default and Demand to Cure.

31.     Defendants had seven (7) days from the date of the letter to cure the default. However, to date, Defendants failed to cure their default with the Inland Empire Trust Funds.

32.     To date, Plaintiffs are informed and believe, and thereon allege, that Defendants are in default and breach of its obligations to the Inland Empire Trust Funds under the Settlement Agreement, the Local 440 Wireman's Agreement, and the Trust Agreements.

//

//

COMPLAINT

33.    Additionally, Plaintiffs are informed and believe, and thereon allege, that Defendants are in default and breach of its obligations to the National Funds under the Local 440 Wireman's Agreement, and the Trust Agreements.

34.    Under the terms of the Trust Agreements and the Employee Retirement Income Security Act, an employer who fails to make timely contributions to the Trust Funds for employee fringe benefits is liable to the Trust Funds for all unpaid contributions, plus, interest, and attorney's fees and collection costs. See also, 29 U.S.C. § 1132(g).

35. Pursuant to 29 U.S.C. § 1132(g)(2), Plaintiffs are further entitled to an amount equal to the greater of: (a) double interest; or (b) liquidated damages.

**FIRST CLAIM FOR RELIEF**
**BREACH OF WRITTEN COLLECTIVE BARGAINING**
**AGREEMENT AND RELATED TRUST AGREEMENTS**
**PLAINTIFFS AGAINST DEFENDANT ACS**
**(29 U.S.C. § 185)**

36.    Plaintiffs hereby incorporate by reference each of the foregoing paragraphs above to the same effect as if set forth verbatim here.

37.    Plaintiffs are informed and believe, and thereon allege, that by the terms of and provisions of the Local 440 Wireman's Agreement and/or related Trust Agreements, and at all times material herein, Defendant ACS agreed, and was obligated to:

37.1    Prepare and submit true, complete and accurate written monthly contribution reports to the Trust Funds and Local 440 on a timely basis showing: (i) the identities of employees performing work covered by the Local 440 Wireman's Agreement and/or the related Trust Agreements, (ii) the number of hours worked by these employees, (iii) the rates of pay, (iv) character of hours worked (e.g., straight time, over-time, etc.), and (v) based upon the hours worked or amounts paid to employees, the

COMPLAINT

proper calculation of the fringe benefit contributions, union dues and/or withholdings attributable to the same employees

37.2    Pay to the Trust Funds and Local 440 fringe benefit contributions, union dues and/or withholdings on a monthly basis, and at specified rates for each hour worked by applicable employees. These amounts are considered delinquent if not received by the Trust Funds and Local 440 by a date certain of the month succeeding the month in which work was performed.

37.3    Permit the Trust Funds and Local 440 and their agents to conduct audits of payroll and related records in order to determine if fringe benefit contributions and other amounts have been properly paid to the Trust Funds and Local 440 pursuant to the Local 440 Wireman's Agreement and/or related Trust Agreements.

38.    Defendant ACS has breached the Local 440 Wireman's Agreement and/or the related Trust Agreements by failing to pay the Trust Funds and Local 440 fringe benefit contributions, union dues and/or other amounts required by the Local 440 Wireman's Agreement and/or related Trust Agreements. Defendant ACS currently owes the Trust Funds and Local 440 for fringe benefit contributions/union dues, in an amount of at least $86,957.37 for the months of April 2021 through March 2022.

39.    Plaintiffs are informed and believe, and allege thereon, that on an ongoing basis, that Defendant ACS will and has continued to fail to pay to the Trust Funds and Local 440 the required fringe benefits contributions, union dues and other amounts owed. The amount of the additional unpaid contributions, union dues and other amounts owed will be established by proof at the trial herein.

40.    Plaintiffs are informed and believe, and allege thereon, that there is no pending unsatisfied condition subsequent or legal excuse for Defendant ACS's failure to comply with the terms of the Local 440 Wireman's Agreement and/or related Trust Agreements.

//

//

COMPLAINT

41.   As of the date of the filing of this Complaint, Defendant ACS is "delinquent," as that term is used in the Local 440 Wireman's Agreement and/or related Trust Agreements.

42.   Pursuant to the Local 440 Wireman's Agreement, related Trust Agreements, and/or section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), ACS is obligated to pay to the Trust Funds liquidated damages for the detriment caused by ACS's failure to pay fringe benefit contributions owed to the Trust Funds in a timely manner. Plaintiffs are informed and believe, and allege thereon, that there is due and payable to from ACS to the Trust Funds liquidated damages related to work performed in an amount of at least $12,902.08.

43.   Pursuant to the Local 440 Wireman's Agreement, related Trust Agreements, and/or section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), Defendant ACS owes the Trust Funds interest on all unpaid fringe benefit contributions from the dates the sums were originally due to the Trust Funds to the date of judgment and post-judgment. The amount of interest of at least $7,041.50.

44.   Pursuant to the Local 440 Wireman's Agreement, related Trust Agreements, and/or section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), ACS is obligated to pay all legal and auditing costs in connection with any delinquency, whether incurred before or after litigation is or was commenced.

45.    It has been necessary for the Plaintiffs to engage legal counsel and incur costs for the purpose of collecting said contributions and other amounts, and the Plaintiffs are entitled to their reasonable attorney's fees in connection therewith. The Plaintiffs may also incur audit costs in connection with Defendant ACS's delinquency. The exact amount of the legal fees and costs due and payable, and any audit costs that may be incurred, have not been ascertained at this time. These amounts shall be established by proof at the trial herein.

//

//

COMPLAINT

46.     Pursuant to section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), the Court may grant such other legal or equitable relief as the Court deems appropriate. As part of the Plaintiffs' judgment, the Plaintiffs request the Court to:

46.1 Order Defendant ACS, its representatives, agents and associates, to provide a full and complete accounting for, and tracing the use of, all unpaid amounts owed pursuant to the Local 440 Wireman's Agreement and Trust Agreements, and identify all property, real or personal, tangible or intangible, that are the profits from the unpaid amounts, whether in whole or in part, of the use of any sums owed to the Trust Fund and Local 440.

46.2 Order Defendant ACS, its representatives, agents and associates, to post and deliver either a good faith deposit, or a performance bond issued in favor of the Trust Funds and Local 440, in an amount to be determined by the Court to be appropriate.

46.3 Order the creation of a constructive trust for the full amount determined to be due to the Plaintiffs on all applicable property of Defendant ACS, and order the transfer of the applicable property to the Plaintiffs; and

46.4 Order Defendant ACS, its representatives, agents and associates, to pay to the Plaintiffs all amounts due to the Trust Funds and Local 440, including, but not limited to, the unpaid contributions, union dues, withholdings, damages, legal fees, audit fees, and other expenses and damages incurred.

47.     Plaintiffs are also seeking injunctive relief, including but not limited to a Temporary Restraining Order, Preliminary Injunction and/or Permanent Injunction:

47.1    Ordering Defendant ACS to submit the required monthly contribution reports and remit the appropriate fringe benefit contributions, union dues and other amounts owed to the Trust Funds and Local 440 on an ongoing basis;

47.2    Enjoining Defendant ACS from continuing to violate its duties under ERISA (by failing to submit the required monthly contribution reports and remit the appropriate fringe benefit contributions owed to the Trust Funds on an ongoing basis);

47.3    Enjoining Defendant ACS from employing employees covered under

COMPLAINT

the Local 440 Wireman's Agreement and related Trust Agreements without properly reporting and remitting to the Trust Funds and Local 440 the amounts owed to the Plaintiffs pursuant to those agreements; and

47.4    Order Defendant ACS to permit the Plaintiffs' auditor access to the wage and payroll books and records of Defendant ACS in order to permit the Plaintiffs to verify the precise amounts owed by Defendant ACS to the Trust Funds and Local 440.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF SECTION 515 OF ERISA**
**PLAINTIFFS AGAINST DEFENDANT ACS**
**(29 U.S.C. §§ 1145 1132)**

48.    Plaintiffs hereby incorporate by reference each of the foregoing paragraphs, inclusive of the sub-paragraphs, above to the same effect as if set forth verbatim here.

49.    Section 515 of ERISA, 29 U.S.C. § 1145, provides "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargaining agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

50.    As stated above, Defendant ACS is an "employer" as defined and used in section 3(5) of ERISA, 29 U.S.C. § 1002(5), and is "obligated to make contributions to a multiemployer plan" within the meaning and use of section 515 of ERISA, 29 U.S.C. § 1145.

51.    Plaintiffs are informed and believe, and allege thereon, that Defendant ACS violated its statutory mandated obligation to timely pay fringe benefit contributions to the Trust Funds. Plaintiffs are informed and believe, and allege thereon, that there is due and payable from Defendant ACS the fringe benefit contributions and other amounts set forth in paragraph 22 above.

52.    Defendant ACS failed to timely cure its violation and has since continued to violate its statutory obligations.

53.     Plaintiffs are informed and believe, and allege thereon, that there is no pending unsatisfied condition subsequent or legal excuse for ACS's violation of section 515 of ERISA, 29 U.S.C. § 1145.

54.     Pursuant to section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), in any action by a fiduciary in which judgment is found in favor of Plaintiffs, the Court shall award the Plaintiffs: (i) the unpaid contributions, (ii) interest on the unpaid contributions, (iii) an amount equal to the greater of, (a) interest on the unpaid contributions or (b) liquidated damages provided for under the Plan in amount not in excess of 20% (or such higher percentages as may be permitted under federal or state law) of the amount determined by the Court to be unpaid contributions, (iv) reasonable attorney's fees and costs, and (v) such other legal or equitable relief as the Court deems appropriate. For purposes of section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), interest on unpaid contributions shall be determined by using the rate provided under the Plan or, if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1986, as amended 26 U.S.C. § 6621. The exact amount of the unpaid contributions, interest, liquidated damages, reasonable attorney's fees, court costs, and other expenses allowed by federal statute and owed by the Defendant to the Trust Funds has not been ascertained at this time. These amounts shall be established by proof at the time of trial.

55.     As part of the Plaintiffs' judgment, the Plaintiffs shall also request the relief set forth in paragraph 46-47, inclusive of sub-paragraphs, above.

### THIRD CLAIM FOR RELIEF
### BREACH OF CONTRACT
### THE INLAND EMPIRE TRUST FUNDS AGAINST DEFENDANTS
### (Cal. Civ. Code § 1549)

56.     Plaintiffs hereby incorporate by reference each of the foregoing paragraphs, inclusive of the sub-paragraphs, above to the same effect as if set forth verbatim here.

//

//

COMPLAINT

57.     As stated above, on February 3, 2022, the Parties entered into a Settlement Agreement, whereby Defendants, jointly and severally, agreed to a pay a total of $42,652.83 by way of monthly payments beginning on February 1, 2022.

58.     By entering into the Settlement Agreement, the Inland Empire Trust Funds agreed not to pursue any legal action against Defendants.

59.     Beginning on March 1, 2022, Plaintiffs are informed and believe, and allege thereon, that Defendants have not made any monthly payments to the Inland Empire Trust Funds.

60.     The Inland Empire Trust Funds provided Defendants with notice of their default, neither ACS or Mr. Kavoossi cured their default.

61.     The Plaintiffs are now enforcing their rights under the Settlement Agreement against both ACS and Mr. Kavoossi, to collect all amounts due.

62.     Furthermore, pursuant to California Civil Code section 3300, for the breach of and obligation arising from contract, the measure of damages is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby.

63.     Pursuant to California Civil Code section 3302, the detriment caused by the breach of an obligation to pay money only, is deemed to be the amount due by the terms of the obligation, with interest thereon.

64.     Therefore, Defendants owe to the Inland Empire Trust Funds the principal amount of $42,652.83, plus amortized interest at the rate of 8% per annum, less all payments received by the Trust Funds, plus attorney's fees and costs.

## **PRAYER**

WHEREFORE, the Plaintiffs pray for judgment as follows:

1.     For unpaid fringe benefit contributions, liquidated damages, and other amounts due as proved;

2.     For damages for breach of contract in amounts as proved;

3.     For interest at the applicable rate on all amounts due from their respective due dates and thereafter post-judgment;

13

COMPLAINT

4.     For reasonable attorney's fees;

5.     For costs of suit incurred herein;

6.     For additional relief as this Court deems just and proper, including, but not limited to, the following:

6.1     An Order directing the Defendants, its representative, agents, and associates, to provide a full and complete accounting for, and tracing the use of, all unpaid amounts owed pursuant to the Settlement Agreement, the Local 440 Wireman's Agreement, the Trust Agreements, and identify all property, real or personal, tangible or intangible, that are the profits from the unpaid amounts, whether in whole or in part, of the use of any sums owed to the Plaintiffs;

6.2     An Order directing the Defendants, its representatives, agents and associates, to post and deliver either a good faith deposit, or a performance bond issued in favor of the Trust Funds, in an amount determined by the Court to be appropriate;

6.3     An Order for the creation of a constructive trust for the full amount determined to be due to the Plaintiffs on all applicable property of the Defendants, and an Order for the transfer of the applicable property to the Plaintiffs; and

6.4     An Order directly the Defendants, its representatives, agents and associates, to pay the Plaintiffs all amounts due the Plaintiffs, including, but not limited to, the Principal Amount pursuant to the Settlement Agreement, the unpaid contributions, union dues, legal fees, audit fees and other expenses and damages incurred.

6.5     Order Defendant ACS to permit the Plaintiffs' auditor access to the wage and payroll books and records of the Defendant ACS in order to permit the Plaintiffs to verify the precise amounts owed by the Defendants to the Trust Funds and Local Unions. Said documents would include the following documents: payroll records, certified payroll records, timecards, payroll registers, form 1099's and 1096's, form W-2, W-3, DE-6 and 941 wage and tax statements, general ledger, accounts receivable listings, cash disbursement journals, job cost records, invoices, subcontracts, cash receipts journals, quarterly federal and state payroll tax returns, cancelled checks and

check stub registers, inspector logs, shift differential logs, work orders, payroll records for related companies, employer contribution reports and cancelled checks regarding contributions owed/paid to other trust funds, detailed worker's compensation insurance reports, and any other books and records that may be necessary to in order to determine the sums owed by the Defendants to the Plaintiffs.

7.    For injunctive relief, including but not limited to a Temporary Restraining Order, Preliminary Injunction and/or Permanent Injunction:

7.1    Ordering the Defendant ACS to submit the required monthly contribution reports and remit the appropriate fringe benefit contributions, union dues and other amounts owed to the Trust Funds and Local 440 on an ongoing basis;

7.2    Enjoining the Defendants from continuing to violate its duties under ERISA (by failing to submit the required monthly contribution reports and remit the appropriate fringe benefit contributions owed to the Trust Funds on an ongoing basis);

7.3    Enjoining the Defendant from employing employees covered under the Local 440 Wireman's Agreement and related Trust Agreements without properly reporting and remitting to the Trust Funds and Local 440 the amounts owed to the Plaintiffs pursuant to those agreements; and

7.4    Order to Defendant ACS to permit the Plaintiffs' auditor access to the wage and payroll books and records of Defendant ACS in order to permit the Plaintiffs to verify the precise amounts owed by the Defendants to the Trust Funds and Local 440. Said documents would include the following documents: payroll records, certified payroll records, time cards, payroll registers, form 1099's and 1096's, form W-2, W-3, DE-6 and 941 wage and tax statements, general ledger, accounts receivable listings, cash disbursement journals, job cost records, invoices, subcontracts, cash receipts journals, quarterly federal and state payroll tax returns, cancelled checks and check stub registers, inspector logs, shift differential logs, work orders, payroll records for related companies, employer contribution reports and cancelled checks regarding contributions owed/paid to other trust funds, detailed worker's compensation insurance reports, and any other

books and records that may be necessary to in order to determine the sums owed by the Defendants to the Plaintiffs.


Dated: May 19, 2022                    /s/ Jessica M. Alvarez
                                       Jessica M. Alvarez, Esq.
                                       Kerry K. Fennelly, Esq.
                                       Valentina S. Mindirgasova, Esq.
                                       Kraw Law Group, APC
                                       1017 East Grand Avenue
                                       Escondido, CA 92025
                                       (760)747-1100 tel
                                       (760)747-1188 fax
                                       jalvarez@kraw.com
                                       kfennelly@kraw.com
                                       vmindirgasova@kraw.com

                                       Attorneys for Plaintiffs

COMPLAINT

EXHIBIT 1

### LETTER OF ASSENT - A

In signing this letter of assent, the undersigned firm does hereby authorize[1] SOUTHERN SIERRAS CHAPTER NECA

as its collective bargaining representative for all matters contained in or pertaining to the current and any subsequent

approved[2] INSIDE WIREMAN'S _____ labor agreement between the

[1] SOUTHERN SIERRAS CHAPTER NECA _____ and Local Union[3] 0440 , IBEW.

In doing so, the undersigned firm agrees to comply with, and be bound by, all of the provisions contained in said current and subsequent

approved labor agreements. This authorization, in compliance with the current approved labor agreement, shall become effective

on the[4] 6TH day of MARCH , 2019

It shall remain in effect until terminated by the undersigned employer giving written notice to the

[1] SOUTHERN SIERRAS CHAPTER NECA _____ and to the Local Union at least one hundred fifty (150)

days prior to the then current anniversary date of the applicable approved labor agreement.

The Employer agrees that if a majority of its employees authorize the Local Union to represent them in collective
bargaining, the Employer will recognize the Local Union as the NLRA Section 9(a) collective bargaining agent for all
employees performing electrical construction work within the jurisdiction of the Local Union on all present and future jobsites.

In accordance with Orders issued by the United States District Court for the District of Maryland on October 10, 1980,
in Civil Action HM-77-1302, if the undersigned employer is not a member of the National Electrical Contractors Association, this letter of
assent shall not bind the parties to any provision in the above-mentioned agreement requiring payment into the National Electrical Industry
Fund, unless the above Orders of Court shall be stayed, reversed on appeal, or otherwise nullified.

SUBJECT TO THE APPROVAL OF THE INTERNATIONAL PRESIDENT, IBEW

ACS ENGINEERING INC. dba ACS ELECTRICAL     #962264
[5] Name of Firm

33 HAMMOND, SUITE #209        P: 949.297.3777
Street Address/P.O. Box Number

IRVINE, CA 92618           F: 949.215.1117
City, State (Abbr.) Zip Code

[6] Federal Employer Identification No. 45-2256570

SIGNED FOR THE EMPLOYER                SIGNED FOR THE UNION[3] 0440 , IBEW

BY[7] _____       BY[7] _____
        (original signature)                (original signature)

NAME[8] Babak Kavoossi          NAME[8] Roger Roper

TITLE/DATE RMO/CEO/President        TITLE/DATE Business Manager

```
┌──────────────────────────────────┐
│          APPROVED                │
│  INTERNATIONAL OFFICE - I.B.E.W.  │
│                                  │
│        March 12, 2019            │
│                                  │
│  Lonnie R. Stephenson, Int'l President │
│  This approval does not make the  │
│  International a party to this agreement │
└──────────────────────────────────┘
```

INSTRUCTIONS (All items must be completed in order for assent to be processed)

[1] NAME OF CHAPTER OR ASSOCIATION
Insert full name of NECA Chapter or Contractors Association involved.
[2] TYPE OF AGREEMENT
Insert type of agreement. Example: Inside, Outside Utility, Outside
Commercial, Outside Telephone, Residential, Motor Shop, Sign, Tree
Trimming, etc. The Local Union must obtain a separate assent to each
agreement the employer is assenting to.
[3] LOCAL UNION
Insert Local Union Number.
[4] EFFECTIVE DATE
Insert date that the assent for this employer becomes effective. Do not
use agreement date unless that is to be the effective date of this Assent.

[5] EMPLOYER'S NAME & ADDRESS
Print or type Company name & address.

[6] FEDERAL EMPLOYER IDENTIFICATION NO.
Insert the identification number which must appear on all forms filed
by the employer with the Internal Revenue Service.

[7] SIGNATURES
[8] SIGNER'S NAME
Print or type the name of the person signing the Letter of Assent.
International Office copy must contain actual signatures-not repro-
duced-of a Company representative as well as a Local Union officer.

A MINIMUM OF FIVE COPIES OF THE JOINT SIGNED ASSENTS MUST BE SENT TO THE INTERNATIONAL OFFICE FOR PROCESSING.
AFTER APPROVAL, THE INTERNATIONAL OFFICE WILL RETAIN ONE COPY FOR OUR FILES, FORWARD ONE COPY TO THE IBEW
DISTRICT VICE PRESIDENT AND RETURN THREE COPIES TO THE LOCAL UNION OFFICE. THE LOCAL UNION SHALL RETAIN ONE
COPY FOR THEIR FILES AND PROVIDE ONE COPY TO THE SIGNATORY EMPLOYER AND ONE COPY TO THE LOCAL NECA CHAPTER.

IBEW.FORM 302 REV. 9/01

MAR 1 2 2010
MAR 1 2 2019

EXHIBIT 2

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement"), entered into as of February 1, 2022, by and among the Trustees of the Inland Empire IBEW-NECA Defined Contribution Trust Fund, the Trustees of the Riverside County Educational and Training Trust Fund, the Trustees of the Inland Empire IBEW-NECA Labor-Management Cooperation Committee Trust, the Southern Sierras Chapter of NECA on behalf of the Administrative Maintenance Fund, and the IBEW Local Union 440 (collectively, the "Trustees") on one hand; and ACS Engineering, Inc., a California corporation ("ACS") and Babak Kavoossi, an individual, on the other hand; is made with reference to the following facts:

## RECITALS

A.      The Trustees are trustees of certain trusts ("Trusts"). ACS is signatory to the Inside Wiremen's Agreement between Local 440 of the IBEW and Southern Sierras Chapter of NECA ("Local 440 IWA"). The Local 440 IWA incorporates by reference the trust agreements establishing each of the Trusts ("Trust Agreements"). ACS is bound by the terms of the Local 440 IWA and the Trust Agreements. The Local 440 IWA and Trust Agreements obligate ACS to pay fringe benefit contributions to the Trustees based on the hours worked and wages paid to its employees who perform work covered by the Local 440 IWA.

B.      With regard to the Local 440 IWA, this Settlement Agreement does not relate to the fringe benefit contributions owed to the Southern California IBEW-NECA Pension Plan, the Family Medical Care Plan, or the National Electrical Benefit Fund (plus associated interest, liquidated damages, attorneys' fees and costs). Those fringe benefit contributions and other amounts that may be due by ACS under the Local 440 IWA to those other entities are collected by other parties, and this Settlement Agreement does not address or resolve those other such delinquencies.

C.      Pursuant to the Local 440 IWA, Trust Agreements, and 29 U.S.C. §§ 1132 and 1145, ACS is currently liable to the Trustees for a sum greater than $42,652.83, including $38,642.86 for fringe benefit contributions based on Monthly Reports submitted by ACS to the Trustees for the work months of June 2021 through October 2021, plus $2,688.98 for liquidated damages and $1,340.99 for accrued interest based on Monthly Reports submitted by ACS to the Trustees for the work months of April 2021 through October 2021.

D.      This Settlement Agreement is being entered into by ACS and Mr. Kavoossi in exchange for the Trustees' agreement to forestall further legal proceedings to collect the amounts owed by ACS for the work months of April 2021 through October 2021.

E.      The Trustees have not audited the records of ACS to verify the accuracy of any Monthly Reports submitted by ACS to the Trustees.

F.    Pursuant to this Settlement Agreement, the Trustees, ACS, and Mr. Kavoossi wish to resolve all disputes between them related to the Monthly Reports submitted to the Trusts for the work months of April 2021 through October 2021.

AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the Trustees, ACS, and Mr. Kavoossi each agree as follows:

1.    Each Recital stated in Paragraphs A through F is true and correct, and is incorporated herein through this reference.

2.    ACS and Mr. Kavoossi, jointly and severally, shall pay to the Trustees the sum of $42,652.83 (the "Principal"), plus amortized interest thereon at the rate of eight percent (8%) per annum accruing from February 1, 2022, by paying the Trustees at least $3,710.30 on or before February 1, 2022, and a like amount on the 1st day of each month thereafter until the Principal plus all accrued interest is paid in full. Time is of the essence under this Settlement Agreement. All payments shall be made by check payable to "Inland Empire IBEW-NECA funds" and remitted so that they are received by the due date to:

Kraw Law Group, APC
Attn: Kerry Fennelly
1017 East Grand Avenue
Escondido, CA 92025

In order to be considered paid, the checks must be honored by the bank upon which they are drawn. All amounts received by the Trustees pursuant to this paragraph shall first be applied to accrued interest, and then to principal. The crediting and apportionment of all amounts paid pursuant to this paragraph shall be at the sole and absolute discretion of the Trustees. The Trustees represent that such crediting and apportionment will be consistent with federal laws, regulations and rules. ACS and Mr. Kavoosssi have the right to make prepayments without penalty, and interest shall accrue only on the balance still owing. Notwithstanding anything to the contrary herein or any prepayment, ACS and Mr. Kavoossi, jointly and severally, shall be obligated to pay the Trustees at least $3,710.30 on or before February 1, 2022, and a like amount on or before the 1st day of each month thereafter until all Principal and interest owed under this Settlement Agreement are paid in full.

3.    ACS shall timely submit to the Trustees its monthly reports for the work month of November 2021 forward, and timely pay to the Trustees fringe benefit contributions and related amounts accruing, including liquidated damages and interest, pursuant to the Local 440 IWA and any successor collective bargaining agreements, ERISA, or statute by which ACS is bound. ACS also agrees to pay any amounts found to be due pursuant an audit conducted by or completed after the date of this Settlement Agreement.

2

4.      Upon request, ACS shall submit to the Trustees any and all Certified Payroll Records for the work performed by ACS on all public works projects from April 1, 2021, forward; and by the 1st day of each month thereafter, ACS shall submit to the Trustees Certified Payroll Records for the work performed by ACS on public works projects for each preceding month, until all amounts due under paragraphs 2 and 3 above are paid in full.

5.      If ACS and/or Mr. Kavoossi fail to satisfy any condition set forth in paragraphs 2, 3, or 4 above, the Trustees shall send written notice by U.S. Mail and Email to Babak Kavoossi (bobk@acsengineering.net), 33 Hammond, Suite 209, Irvine, CA 92618. If ACS and Mr. Kavoossi fail to comply with any conditions set forth in paragraphs 2, 3, or 4, above within seven (7) calendar days of the mailing and emailing of said notice, ACS shall be in default ("Default") under this Settlement Agreement, and the principal amount of $42,652.83 plus amortized interest thereon at the rate of eight percent (8%) per annum accruing from February 1, 2022, less all payments received by the Trustees pursuant to paragraph 2 above, shall become immediately due and owing to the Trustees, and the Trustees shall have the immediate right to take any and all legal actions to collect the amounts due including, but not limited to, filing a lawsuit against ACS and/or Mr. Kavoossi in the U.S. District Court, and other court of appropriate jurisdiction, to collect all amounts owed under this Settlement Agreement, the Local 440 IWA, the Trust Agreements, and/or ERISA, 29 U.S.C. § 1001 et seq., including all attorneys' fees and costs.

6.      Upon completion of all payments and acts required in paragraphs 2, 3, and 4 above, and provided ACS and Mr. Kavoossi are not in Default as defined in paragraph 5 above, the Trustees release, acquit and forever discharge ACS and Mr. Kavoossi from all claims, actions, causes of action, rights, or demands for fringe benefit contributions, liquidated damages, interest, attorneys' fees, and court costs based on the Monthly Reports submitted by ACS to the Trustees for the months of April 2021 through October 2021.  With regard to the Local 440 IWA, this release does not relate to any fringe benefit contributions that may be owed to the Southern California IBEW-NECA Pension Plan, the Family Medical Care Plan, or the National Electrical Benefit Fund (plus associated interest, liquidated damages, attorneys' fees and costs).

7.      It is understood and agreed by ACS and Mr. Kavoossi that the Trustees have not audited ACS for recent time periods, and that this Settlement Agreement shall not be used to preclude the Trustees from collecting amounts owed by ACS based on hours not reported to the Trustees on the Monthly Reports for the months of April 2021 through October 2021.

8.      In the event of any legal action or other legal proceeding concerning any term or condition contained herein or the enforcement of any provision herein, the prevailing party shall be entitled to its reasonable attorneys' fees, court costs and expenses.  The term "prevailing party" shall be that as defined in California Code of Civil Procedure § 1032.

3

9.    This Settlement Agreement shall not be construed against the party preparing it, but shall be construed as if the parties hereto jointly prepared this Settlement Agreement, and any uncertainty and ambiguity shall not be interpreted against any one party.

10.    This Settlement Agreement is intended by the parties hereto as a final expression of their agreement and is intended to be a complete and exclusive statement of the agreement and understanding of the parties hereto with respect to the subject matters contained herein.  This Settlement Agreement supersedes any and all prior agreements, promises, representations, warranties, agreements, understandings, and undertaking and among the Trustees, ACS, and Mr. Kavoossi, with respect to such subject matters and there are no other or further promises, representations, warranties, agreements, understandings, or undertakings.  If any provision of this Settlement Agreement, or the application thereof, shall for any reason or to any extent be construed by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Settlement Agreement, and application of such provisions to other circumstances, shall remain in effect and be interpreted so as to reasonably effect the intent of ACS, Mr. Kavoossi, and the Trustees.

11.    This Settlement Agreement shall be binding on the successors or assigns of the Trustees, ACS, and Mr. Kavoossi. ACS and Mr. Kasvoossi, and the Trustees represent that the person executing this Settlement Agreement on its behalf is legally competent and is authorized to enter into this Settlement Agreement and to bind said party to the representations, terms and conditions set forth herein.

12.    This Settlement Agreement may be signed in counterparts.  Signatures delivered via facsimile and e-mail transmission shall have the same force and effect as the originals.

4

ACS ENGINEERING, INC., a California corporation

Dated: 2/3/22          By:

Babak Kavoossi, President/Chief Executive Officer

BABAK KAVOOSSI, an individual

Dated: 2/3/22          By:

Babak Kavoossi, individually

TRUSTEES OF THE INLAND EMPIRE IBEW-NECA DEFINED CONTRIBUTION TRUST FUND, THE TRUSTEES OF THE RIVERSIDE COUNTY EDUCATIONAL AND TRAINING TRUST FUND, THE TRUSTEES OF THE INLAND EMPIRE IBEW-NECA LABOR-MANAGEMENT COOPERATION COMMITTEE TRUST, THE SOUTHERN SIERRAS CHAPTER OF NECA ON BEHALF OF THE ADMINISTRATIVE MAINTENANCE FUND, AND THE IBEW LOCAL UNION 440

Dated: 02/03/2022          By:

Name: Tavia Brunner
Title: Joint Collection Committee Trustee

Dated: 2/3/22          By:

Name: Jason Eshelman
Title: Joint Collection Committee Trustee

Dated: 2/7/22          By:

Name: James Rush
Title: Joint Collection Committee Trustee

5